By the Court, Barbour, J.
The evidence in the case, as it now stands, is wholly insufficient to sustain the finding of the referee, that the alleged agreement between Beers and the plaintiff, touching the purchase of the bills in question, was made. But such finding is by no means important, inasmuch as an action based upon the advance of moneys under such agreement is barred by the statute of limitations, and the plaintiff’s claim to recover must, consequently, rest solely upon his ownership of the bills of exchange and the sealed guaranty of Mr. Beers.
It appears quite clear that neither the bills of exchange in question, nor Beers’ guaranty thereof, passed to the plaintiff by the assignment to him. Certainly such guaranty of bills is not covered by the assignment of Beers’ guaranty of the certificates of the company. So, to, the schedule, which must be considered a part and portion of the assignment, in so far, at least, as to estop Mr. Beers from denying the averments therein contained, (see Coke Litt. 352, a, b; Comyn’s Dig. Estoppel E, 2; Sinclair v. Jackson, 8 Cowen, 586,) shows that more than five years before such assignment was made, Yyse had surrendered to the company the bills of exchange, being the principal debt for which, alone, Beers was liable as guarantor, and took in lieu thereof other obligations of the company, called Yates Trust notes. It is impossible to construe the statement in the schedule that Yyse was urged by the president to give up the bills and take as security the notes of the company, known as the Yates Trust notes, together with the succeeding declaration that the only security then held by him for the sum covered by the bills of exchange was certain notes of the Yates Trust, in such a manner as to avoid this conclusion; although it may be evident, from the testimony of the plaintiff, that both he and Beers supposed, when such assignments were executed, that the bills of exchange, together with such guaranty, still belonged to the estate of Yyse, and were covered by the assignment.
Indeed, it requires a careful examination of the entire *138 schedule in order to ascertain the true state of the claim. But, upon making such examination, it will be found quite apparent that such schedule, (which is drawn in a very inartificial manner,) was designed to show, not merely the then state of the indebtedness of the company to Vyse, but the origin thereof; or, in other words, to exhibit all the transactions between them touching the claims. Certainly, the claims of Yyse against the company then consisted of ninety-three notes of the Yates Trust, and the ten indorsed notes set forth in the schedule, and that he then held no other securities of the company whatever.
The judgment, so far as relates to this matter should, therfore, be reversed, with costs, and a new trial ordered.